The document below is hereby signed.

Signed: February 17, 2011.



_____
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| NATION'S CAPITAL CHILD AND | ) | Case No. 09-00576 |
| FAMILY DEVELOPMENT, INC., | ) | (Chapter 11) |
| | ) | |
| Debtor. | ) | **Not for Publication in** |
| | ) | **West's Bankruptcy Reporter** |

MEMORANDUM DECISION AND ORDER RE MARYLYN TREE, LLC'S
MOTION TO AMEND THE ORDER OF CONDITIONAL ASSUMPTION OF THE LEASE

The debtor leases real property from Marylyn Tree, LLC. At a hearing of December 16, 2009, of the debtor's motion to assume the lease of that property, the parties agreed to submit an order approving the debtor's assumption of the lease on certain terms. The parties are in agreement that the order was to leave open the question of administrative fees, late fees, and attorney's fees owed the landlord. The landlord has now filed a motion (Dkt. No. 141) for entry of an order specifying the amount of late fees and attorney's fees owed the landlord.[1] The trustee does not

---

[1] The parties never submitted an agreed order, but the landlord's motion bore a title (Marylyn Tree, LLC's Motion to Amend the Order of Conditional Assumption of the Lease) as though an order had already been entered.

contest the $50.00 administrative fee claimed by the landlord for a returned check, but does contest the late fees and attorney's fees.

I

LATE FEES

Section 5.1(B) of the lease provided:

> In addition to constituting a Default under the Lease, in the event any Rent, or installment thereof, is not paid within five (5) calendar days after it is due then Tenant shall also pay to Landlord, as additional Rent, a late payment fee equal to the greater of $300.00 or five percent (5%) of such delinquent Rent for each and every month, or part thereof, thereafter that such Rent remains unpaid (provided, however, that Landlord shall provide written notice and Tenant shall have ten (10) days from notice to pay before incurring a late payment fee[.]

On April 21, 2009, the landlord's counsel sent a letter to the debtor, via certified mail, which advised the debtor that it was in default of its obligations under the lease:

> **Specifically you are hereby notified that the Tenant is in default in the payment of rent and late charges in the amount of $153,490.00 for the period of November, 2007 through April, 2009 in accordance with the rent roll attached hereto and incorporated herein by reference.** In addition, the Tenant is in default for failure to pay Real Estate Taxes owed on the premises in the amount of $6,037.33, as can be seen in the bill attached along with $1,000 in attorney's fees to date. In addition, you are required to pay the Landlord insurance bill in the amount of $2,026.28 as required by the Lease. Copies of all statements are attached. All of the above sums are currently due, except that an additional 10 days will be allowed for the payment of the Landlord's insurance, as provided by the Lease Agreement. **You are hereby given ten days notice to cure such default from the date that this notice is served upon you.**

> **If payment is not received and the aforesaid defaults not cured as required herein the Landlord shall institute an action for possession in accordance with the applicable provisions of the lease.**

[Emphasis added.] The attached rent roll showed the rents that had gone unpaid for the months of November 2007 through April 2009.  The debtor failed within 10 days to cure the rent arrears, and the landlord seeks $12,785.00 in late fees.

The debtor does not dispute that this notice was mailed in accordance with the terms of the lease or that the landlord gave notice of ten days to cure the rent arrears as contemplated by the lease.  Instead, the debtor contends that waiting until nineteen months of rent had not been paid is unconscionable, and that a landlord ought not be permitted to "lay behind the log" and spring a notice of default on the debtor only after a large number of months of rent defaults has occurred because it would be impossible, at that juncture, for the debtor to cure on only ten-days notice.  The lease neither barred the landlord's waiting for some time before giving notice of a default in paying rent nor its giving notice of multiple rent defaults at the same time. The debtor's objection to the claim for late fees is overruled.

II

ATTORNEY'S FEES

A

The landlord seeks attorney's fees pursuant to sections 15.2(d) and 15.3 of the lease.  Section 15.2(d) of the lease

3

authorized the landlord to collect attorney's fees in the event of a default by the tenant and specifically provided:

> In the event of any such Default by Tenant, then in addition to any other remedies available to Landlord at law or in equity, Landlord shall have the immediate option to terminate this Lease and all rights of Tenant hereunder by giving written notice of such intention to terminate.  In the event that Landlord shall elect to so terminate this Lease, then Landlord may recover from Tenant:
>
> ....
>
> (D) Any other amount necessary to compensate Landlord for all the detriment proximately caused by Tenant's failure to perform its obligations under this Lease (including the costs and disbursements of recovering the Premises and reasonable attorneys' fees) or which in the ordinary course of events would be likely to result therefrom[.]

On May 8, 2009, the landlord's counsel sent a letter to the debtor, via certified mail, which notified the debtor that the lease was terminated.  Section 15.3 of the lease also authorized the landlord to collect attorney's fees in the event of a tenant's default and provided, in pertinent part, that:

> In the event Landlord shall file any legal action for the collection of Rent or any eviction proceeding, whether summary or otherwise, for the non-payment of Rent, and Tenant shall make payment of such Rent due and payable prior to the rendering of any judgment, then Landlord shall be entitled to collect, and Tenant shall be obligated to pay, all court filing fees and, the reasonable fees of Landlord's attorneys (such fees shall, at a minimum, be no less than the greater of $300.00 or five percent (5%) of the Rent due and payable).

Relying on these two provisions of the lease, the landlord seeks

a total of $65,331.31 in attorney's fees.[2]

The lease, however, contained another attorney's fees provision in section 16.4, which provided that:

> In any action or proceeding between Landlord and Tenant, each agrees that the substantially prevailing party shall be entitled to recover its legal fees and court costs from the other in addition to the amounts otherwise due hereunder.

The trustee argues that this provision is mutually exclusive and irreconcilable with sections 15.2(d) and 15.3, thus creating an ambiguity in the lease.  The trustee urges the court to resolve the ambiguity by employing a fair construction of the lease terms.[3]  Under this construction, attorney's fees should only be awarded to the substantially prevailing party in any action or proceeding pursuant to section 16.4.  The landlord responds that there is no ambiguity and that the specific terms contained in sections 15.2(d) and 15.3 should control over the more general language found in section 16.4 of the lease.

When construing a lease, "the writing must be interpreted as a whole, giving a reasonable, lawful, and effective meaning to all its terms."  <u>Washington Auto. Co. v. 1828 L St. Assocs.</u>, 906

---

[2] The landlord attached, as exhibits D and E to its Memorandum in Support of Its Motion to Modify the Order of Assumption (Dkt. No. 175), two Transactions Listing Reports. These reports displayed the charges incurred by landlord's counsel both pre and post-petition.

[3] Under section 16.22, the lease "shall be interpreted as a whole according to its fair meaning."

A.2d 869, 879 (D.C. 2006) (quoting <u>1010 Potomac Assocs. v. Grocery Mfrs. of Am., Inc.</u>, 485 A.2d 199, 205 (D.C. 1984)).  A court is required to "honor the intentions of the parties as reflected in the settled usage of the terms they accepted in the contract ... and will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity."  <u>Id.</u> at 879-80 (quoting <u>Bragdon v. Twenty-Five Twelve Assocs. Ltd.</u>, 856 A.2d 1165, 1170 (D.C. 2004).  Moreover, when interpreting a contract, specific contract terms are provided greater weight than general language.  <u>Id.</u> at 880. (quoting RESTATEMENT (SECOND) OF CONTRACTS § 203(c) (1981).

    A plain reading of the lease that gives effect to all of the parties' language and the agreement as a whole demonstrates that in sections 15.2(d) and 15.3, the parties intended to establish specific terms providing attorney's fees to the landlord in the event of a default by the tenant.  In section 15.2(d), the landlord is entitled to compensation for all the detriment proximately caused by the tenant's default, including reasonable attorney's fees.  Section 15.3 of the lease similarly entitles the landlord to attorney's fees in the event a tenant defaults, but later pays rent due after the landlord has initiated a rent collection or eviction action and prior to the rendering of a judgment.  The parties intended these sections to be separate and distinct from the more general attorney's fee provision contained

6

in section 16.4 covering any action or proceeding between the landlord and the tenant.  Moreover, because sections 15.2(d) and 15.3 address the precise issue of attorney's fees in the event of a default, they are entitled to greater weight.  Based on the clear language of the lease, sections 15.2(d) and 15.3 trump section 16.4 and govern the entitlement to attorney's fees in this matter.

B

Since filing its motion, the landlord reduced its request for attorney's fees by eliminating certain charges contained in the Transactions Listing Reports that form the basis of its fee request.  These reports are attached as Exhibits D and E to the landlord's Memorandum in Support of its Motion to Modify the Order of Assumption.  These reductions total $3,751.00, thus bringing the landlord's fee request down to $61,580.31.  Aside from these reductions, the trustee has raised objections to certain charges contained in the landlord's request for attorney's fees.  I shall address these objections in turn.

First, the trustee objects to a $525.00 charge relating, in part, to the receipt and review of a motion to consolidate on June 23, 2009.  The trustee contends that this charge relates to the tenant's motion to consolidate the underlying landlord tenant proceeding with a civil action filed by the tenant in D.C. Superior Court.  The landlord argues that the motion to

consolidate was a pre-bankruptcy-petition motion related to the landlord's efforts to recover on account of the tenant's default. I agree and reject the trustee's objection to this charge.

The trustee also objected to four charges relating to work performed by landlord's counsel on December 1, 2009. Two of those charges appear to relate to the landlord's note with its secured creditor, Cardinal Bank. They include an entry for $35.00 for, in part, a brief correspondence regarding a default with Cardinal Bank, as well as an entry for $262.50 for multiple items including a review of accounting, a forbearance agreement and deed of trust, and responding to emails.

The trustee contends that these two charges are not compensable because they are outside the scope of the landlord's rent collection efforts. The landlord responds that the charges address difficulties it had with its note with Cardinal Bank and that those difficulties were proximately caused by the tenant's default. The court finds that the two charges are too remote to be proximately caused by the tenant's default. In addition, the charges relate to matters outside the landlord's legal action against the tenant to collect rent. Accordingly, the trustee's objection to the inclusion of these two charges is sustained. The charge for $35.00, however, also concerns work performed in connection with the debtor's motion to assume the lease agreement, which directly relates to the tenant's default and the

landlord's legal action to collect rent.  Therefore, I shall reduce this charge by 50%.

As to the remaining December 1, 2009 charges, the first contains the following narrative: "Reviewed materials to support my role in bankruptcy court proceedings. Discussed with MEB." The entry is from an attorney "PM."  In the time-period preceding and following the December 1, 2009 charge, this same attorney charged for work relating to the landlord-tenant issues in the bankruptcy case, including the debtor's motion to assume the lease.  Given this context, the court finds that this particular entry relates to work in connection with the landlord's legal action to collect rent and accordingly rejects the trustee's objection to this charge.  The last December 1, 2009 charge contains the following narrative: "Mett [sic] with D. Cameron; review bank issues; advised to have counsel - [redacted]."  The trustee contends that none of these items relate to the landlord's legal action to collect rent.  The landlord did not respond to this objection.  It does not appear that this charge relates to either the tenant's default or to the landlord's legal action to collect rent.  Accordingly, the court sustains the trustee's objection to the inclusion of this charge in the landlord's request for attorney's fees.

C

As a final matter, the court has examined the two

9

Transactions Listing Reports offered by the landlord in support of its fees request and has concerns about the inclusion of certain charges. First, it appears that a few of the charges on the report were counted twice toward the total fee request. The following list contains the apparent double charges:

| Date | Prof | Narrative | Value |
|---|---|---|---|
| 9/23/09 | MEB | Attend meeting of creditors; conference with Trustee; examine witness; conference with IRS rep. conference with client; return to office | 525.00 |
| 9/23/09 | MEB | Attend meeting of creditord [sic]; Conference with Trustee; examine witness; conference with IRS re: conference with client; return to office | 525.00 |
| 12/10/09 | MEB | Conference with PM re: settlement pending in motion to assume lease - email exchange with PM | 150.00 |
| 12/10/09 | MEB | Conference with PM re: settlement pending on Motion to Assume Lease - email exchange with PM | 150.00 |
| 12/11/09 | MEB | Email exchange re: tentative settlement in assumptions case; t/c w/PM | 75.00 |
| 12/11/09 | MEB | Email exchange re: tentative settlement in Assumptions case; t/c w/PM | 187.50 |
| 12/14/09 | MEB | Receive and review multiple email [sic] re: potential settlement and outstanding issues. | 150.00 |
| 12/14/09 | MEB | Receive and review multiple emails re: potential settlement and outstanding issues | 150.00 |

| Date | Prof | Narrative | Value |
|---|---|---|---|
| 12/21/09 | MEB | Receive and review email from Chris Moffitt; revise consent order | 187.50 |
| 12/21/09 | MEB | Receive and review email from Chris Moffit; revise consent order. | 187.50 |

In addition, the court questions whether a host of other charges contained in the report are compensable under sections 15.2(d) or 15.3 of the lease. The following list contains the charges that the court finds questionable. Where multiple items are listed in the narrative, those that are questionable are denoted in bold font:

| Date | Prof | Narrative | Value |
|---|---|---|---|
| 7/10/09 | KJL | **Meet with D. Cameron regarding his case**, TC to B. Ross regarding NCFFD | 450.00 |
| 7/13/09 | MEB | Review motion to dismiss | 150.00 |
| 7/14/09 | GB | Received and reviewed [S]eville [B]uilders motion to dismiss and 2316 [W]isconsin [LLC] suggestion of bankruptcy | 35.00 |
| 7/20/09 | GB | Reviewed bankruptcy docket/deadlines/summary of schedules/financial statement/mtg of creditors; email to MEB [redacted] re: same; **prepared notice of deposition and request for documents to be produced; conferred w/MEB re: [redacted]** | 210.00 |
| 7/20/09 | MEB | Conference with KJL re: lease and bankruptcy issues; **conference with GB re: subpoena** and motion for relief from stay legal research and writing | 450.00 |

| Date | Prof | Narrative | Value |
|---|---|---|---|
| 7/20/09 | MEB | T/c with Carroll Hauptle re: motions review affs of service; email to Hauptle re: vacating defaults review ruler; legal research and writing | 375.00 |
| 7/22/09 | GB | **Received and reviewed MEB edits to [redacted]; revised accordingly; emails w/MEB re: same; conferred w/AH re: [redacted]**; meeting with MEB re: bankruptcy docs; **received and reviewed MEB edits to [redacted]** revised motion, proposed order and notice of opp to object accordingly; **drafted letter to [redacted] re: deposition/subpoena; reviewed case docket for B&H Investment v Marylyn Tree; emails w/MEB re: same** | 280.00 |
| 7/24/09 | MEB | Conference with KJL re: strategy and **deposition** | 112.50 |
| 7/27/09 | GB | **Received MEB edits to docs from Friday; Revised Notice of deposition. Docs to be produced**, [redacted] re: bankruptcy docs and **notice of deposition docs; received and reviewed MEB revisions to [redacted]; revised accordingly; T/C to/with LLoyd re: serving subpoena**; prepared exhibits for bankruptcy motion; prepared docs for filing, serving, mailing; email to CA re: same; conferred w/Lloyd re: completion of service of process; email to DS re: same | 437.50 |
| 7/27/09 | MEB | Conference with GB re: motion for relief and **deposition** - filing research and prep | 150.00 |

| Date | Prof | Narrative | Value |
|---|---|---|---|
| 7/27/09 | MEB | Reveive [sic] and review copy of other complaint by HH | 150.00 |
| 8/12/09 | MEB | Prep for hearing set for 8/13 review files and organize files - review motion for relief from stay and testimony issues; **review objection to motion to convert**; etc. | 2,250.00 |
| 8/19/09 | KJL | Conference with MEB [redacted] regarding Cameron and status. | 90.00 |
| 8/25/09 | MEB | Email notices from court re: compensation petition, etc. | 112.50 |
| 9/3/09 | MEB | T/c w/Allison Rind @ Search Early re: release of funds and **mortgage** Conference with GB re: new motion | 225.00 |
| 9/15/09 | ACH | Discuss Cameron with M Brand briefly | 26.25 |
| 9/22/09 | KJL | [redacted] regarding Cameron, meet with MEB | 135.00 |
| 10/6/09 | MEB | Email from Bob Cameron re: budget issues. | 112.50 |
| 10/6/09 | ACH | Efile for Cameron, reply to opposition. | 43.75 |
| 10/6/09 | ACH | Cameron bankruptcy hearing. | 525.00 |
| 10/7/09 | MEB | **Email exchange re: preacipe [sic] for Dismissal**; t/c w/Sherman | 112.50 |
| 10/8/09 | MEB | T/c w/client re: payments and release of funds; **email re: praecipe executions** | 187.50 |
| 10/13/09 | MEB | Email exchanges re: release of money; **email to Hauser re: praecipe** | 225.00 |
| 10/14/09 | MEB | Receive and review email from [redacted] process praecipe instructions to staff | 150.00 |

| Date | Prof | Narrative | Value |
|---|---|---|---|
| 10/21/09 | MEB | **Email re: motion to dismiss**; conference with KJL re: release of funds | 150.00 |
| 10/28/09 | MEB | Email exchange with client and Allison Rind re: forbearance agreement and loan default | 225.00 |
| 10/30/09 | MEB | T/c w/Dave Cameron; receive and review emails re: meeting with; wants [redacted] meeting with; instructions re: drafting checks | 112.50 |
| 10/31/09 | MEB | T/c w/Dave Cameron; check delivered; email to A. Rind | 112.50 |
| 11/6/09 | MEB | Order mortgage payment to be made; t/c w/Chris Moffit re: distribute of proceeds | 112.50 |
| 11/6/09 | MEB | T/c w/Chris Moffit re: file issue; discussion re: termination areement [sic] - meet with AH re: same | 150.00 |
| 11/30/09 | MEB | Email exchange w/client re: payment of mortgage, taxes and fees | 187.50 |
| 12/21/09 | ACH | .30 review of all correspondence .20 review of notices of deposition .75 research and draft memo on notice of deposition | 218.75 |
| 2/3/10 | MEB | Meet with Cameron re: deposition | 75.00 |

To address the court's concerns, the landlord is granted leave to file an affidavit explaining: (1) whether the apparent double charges in fact relate to distinct work-items that are each compensable; and (2) why the charges the court finds questionable are in fact compensable under sections 15.2(d) or 15.3 of the lease. After reviewing that affidavit, the court

14

shall determine the amount of the landlord's reasonable attorney's fees.

                                III

Pursuant to the foregoing, it is

ORDERED that within 14 days after entry of this order, the landlord shall file an affidavit with the court addressing the court's concerns with its request for attorney's fees, and the trustee may file a response within 14 days of the filing of the same. The court shall thereafter make a determination as to the amount of the landlord's reasonable attorney's fees, and thereby dispose of the Motion to Amend the Order of Conditional Assumption of the Lease on terms consistent with this Memorandum Decision and Order.

                                        [Signed and dated above.]


Copies to: Debtor; Debtor's Attorney; Office of United States Trustee; Trustee; Jeffrey Sherman, Esq.; Michael Brand, Esq.; Andrew Currie, Esq.